IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| BARACK OCHONDO,<br>*On Behalf of Himself and All Others Similarly Situated*,<br><br>          Plaintiff,<br><br>v.<br><br>SPECIALIZED LOAN SERVICING LLC,<br><br>          Defendant. | Case No. 1:20-cv-00701<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Barack Ochondo, on behalf of himself and all others similarly situated, alleges breach of contract and violations of the Texas Finance Code §§ 392 *et seq.* and in support thereof states as follows:

**INTRODUCTION**

1. Defendant Specialized Loan Servicing ("SLS"), a servicer of residential mortgages, routinely violates state debt collection law and breaches the uniform terms of borrowers' mortgages ("Uniform Mortgages") by charging and collecting illegal processing fees when borrowers pay their monthly mortgage by phone ("Pay-to-Pay Fees"). SLS charges homeowners a fee of $7.50 to make a mortgage payment over the phone using an Interactive Voice Response ("IVR") system, and $12.50 to make a mortgage payment over the phone with a customer service representative.

2. SLS services mortgages throughout the United States and is supposed to be compensated out of the interest paid on each borrower's monthly payment—not via additional "service" fees that do not reflect the cost to SLS of providing such services.

Under Texas law, SLS cannot mark-up the amounts it pays third parties to provide borrowers' services and impose unauthorized charges to create a profit center for itself. Yet SLS charged users fees that go above and beyond the cost to SLS to process the mortgage payments, which, based on industry practice, is typically around $0.50 per payment. SLS pockets the difference ($7.00 and $12.00 per payment) as profit.

3. Federal and Texas law prohibit SLS from charging any fees that are not explicitly included in the mortgage agreement. None of the Pay-to-Pay Fees are permitted by the mortgage agreements, and, therefore, SLS violates Texas law by charging the fees. And, the Uniform Mortgages serviced by SLS prohibit SLS from collecting fees in violation of applicable law and those not specifically allowed. Thus, by unlawfully collecting fees not specifically authorized by the mortgages, SLS breaches its contracts with borrowers when it collects Pay-to-Pay Fees. Even if some fee were allowed, the mortgage uniform covenants only allow SLS to pass along the actual cost of fees incurred by it to the borrower – here only a few cents per transaction.

4. Despite its uniform contractual obligations to charge only fees explicitly allowed under the mortgage and under applicable law, and only those amounts actually disbursed, SLS leverages its position of power over homeowners and demands exorbitant Pay-to-Pay Fees.

5. Plaintiff Barack Ochondo paid these Pay-to-Pay Fees, and he brings this class action lawsuit individually and on behalf of all similarly situated putative class members to recover the unlawfully charged Pay-to-Pay Fees.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction because SLS maintains its principal place of business in this District.

7. Subject matter jurisdiction exists under the Class Action Fairness Act because diversity exists between the defendant and at least one class member and the amount in controversy exceeds $5,000,000.

8. Venue is proper because this is where the cause of action occurred.

## PARTIES

9. Plaintiff Barack Ochondo is a natural person residing in Texas with a mortgage loan serviced by SLS. Mr. Ochondo makes loan payments over the phone and each time he does so, SLS charges him a Pay-to-Pay Fee. For example, on or about October 17, 2019, SLS charged Mr. Ochondo $7.50 for making a mortgage payment over the phone.

10. Defendant SLS Central Mortgage Co. is a Delaware corporation with its principal place of business in Colorado.

## APPLICABLE LAW

### Texas Finance Code

1. Chapter 392 of the Texas Finance Code protects Texas consumers from deceptive and predatory debt collection practices.

2. The Texas Finance Code defines "consumer debt" as "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from

a transaction or alleged transaction." Tex. Fin. Code § 392.001(2).

3. A "debt collector" is a person who "directly or indirectly engages in debt collection," which is in turn defined as "an action, conduct, or practice in collecting . . . consumer debts that are due or alleged to be due a creditor." Tex. Fin. Code §§ 392.001(5)-(6).

4. The Texas Finance Code prohibits (1) collecting or attempting to collect a … charge, fee, or expense incidental to the obligation unless the … incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code § 392.303(a)(2).

11. The Texas Finance Code also prohibits representing that a consumer debt "may be increased by the addition of … service fees, or other charges if a written contract or statute does not authorize the additional fees or charges." Tex. Fin. Code § 392.304(a)(12).

**FHA SERVICING RULES**

12. The Federal Housing Administration, an agency within the United States Department of Housing and Urban Development, "provides mortgage insurance on loans made by FHA-approved lenders throughout the United States and its territories."[1] The FHA "is the largest insurer of mortgages in the world, insuring over 47.5 million properties since its inception in 1934."[2]

---

[1] HUD.gov – The Federal Housing Administration, https://www.hud.gov/program_offices/housing/fhahistory (last visited on March 9, 2020).
[2] *Id.*

4

13. The FHA provides incentives to private lenders to make loans to would-be homebuyers whose creditworthiness and inability to contribute a significant down payment make it difficult for them to obtain a home loan on reasonable terms.

14. To achieve that goal, "FHA mortgage insurance provides lenders with protection against losses as the result of homeowners defaulting on their mortgage loans. The lenders bear less risk because FHA will pay a claim to the lender in the event of a homeowner's default."[3]

15. The FHA restricts who can make and service FHA loans. "Only FHA-approved Mortgagees may service FHA-insured Mortgages," and those "Mortgagees may service Mortgages they hold or that are held by other FHA-approved Mortgagees." (*Id.*)

16. SLS is an FHA-approved Mortgagee.

17. As an FHA-approved Mortgagee, SLS must annually "acknowledge that the Mortgagee is now, and was at all times throughout the Certification Period, subject to all applicable HUD regulations, ***Handbooks***, Guidebooks, Mortgagee Letters, Title I Letters, policies and requirements, as well as Fair Housing regulations and laws including but not limited to 24 CFR § 5.105, Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act) and Title VI of the Civil Rights Act of 1964."[4]

18. HUD's servicing requirements restrict the fees and charges an FHA-approved Mortgagee may collect from the typically lower-income FHA borrower. HUD

---

[3] *Id.*

[4] *See*, FHA Lender Annual Certifications: Supervised and Nonsupervised Mortgagees, Changes Implemented 8/1/2016, https://www.hud.gov/sites/documents/SFH_COMP_SUPERNONSUPER.PDF (last visited on March 9, 2020) (emphasis added).

Handbook 4000.1: *Single-Family Housing Policy*, https://www.hud.gov/sites/documents/40001HSGH.PDF (last visited on March 13, 2020) (the "HUD Handbook").

19. HUD makes clear "[t]he Mortgagee must fully comply with all of the following standards and procedures when servicing a Mortgage insured by the Federal Housing Administration." *Id.*

20. These mandatory restrictions include limits on the types and amounts of fees and charges an FHA-approved Mortgagee may collect from a borrower.

21. FHA-insured mortgages contain uniform covenants.

22. In one such uniform covenant, the parties to the mortgage agree that "Lender may collect fees and charges ***authorized*** by the Secretary [of Housing and Urban Development]." Ex. A at ¶ 8 (emphasis added).

23. This provision incorporates by reference HUD's limits on allowable fees.

24. The HUD Handbook establishes what fees and charges are authorized by the Secretary of HUD.

25. Appendix 3.0 of the HUD Handbook contains an exhaustive list of the servicing fees and charges authorized by HUD and the maximum amounts that may be charged for such fees.[5]

26. Pay-to-Pay fees are not on that list.

---

[5] In the PDF version of the HUD Handbook, the term "maximum amount allowed by HUD" contains an internal hyperlink that, when clicked, brings the reader to Appendix 3.0.

6

27. Based upon information and belief, the Pay-to-Pay fees that SLS collects from borrowers exceed its out-of-pocket costs by several hundred percent, and thus violate mandatory HUD servicing rules that are incorporated into all FHA-insured mortgages.

## FACTUAL ALLEGATIONS

28. SLS is a loan servicer that operates around the country.

29. Each time a mortgage borrower whose loan is serviced by SLS makes a payment over the phone (a "Pay-to-Pay Transaction"), SLS charges the borrower a Pay-to-Pay Fee: $7.50 for payments made over the phone with IVR, and $12.50 for payments made over the phone with a customer service representative.

30. The usual cost that a servicer like SLS pays to process Pay-to-Pay Transactions is $0.50 or less per transaction. Therefore, the actual cost to SLS to process the Pay-to-Pay Transactions is well below the amounts charged to borrows, and SLS pockets the difference ($7.00 and $12.00) as profit.

31. The Uniform Mortgages of SLS's customers do not authorize SLS to charge Pay-to-Pay Fees. In fact, the Pay-to-Pay Fees violate borrowers' mortgages.

### Named Plaintiff's Facts

32. On or about September 21, 2001, Plaintiff Ochondo purchased a home in Harris County, Texas, secured by a mortgage (the "Mortgage Agreement"). The Mortgage Agreement is attached as **Exhibit A.** Mr. Ochondo took out the mortgage secured by his property for personal, family, or household uses.

33. At some point, SLS acquired the servicing rights to the loan.

34. Mr. Ochondo makes loan payments over the phone and each time he does so, SLS charges him a Pay-to-Pay Fee. For example, on or about October 17, 2019, SLS charged Mr. Ochondo $7.50 for making a mortgage payment over the phone.

35. These fees are not authorized by the Mortgage Agreement.

36. Charging Pay-to-Pay Fees not authorized by the Mortgage Agreement violates Texas Finance Code §§ 392.303 and 392.304 because the Mortgage Agreement does not expressly allow Defendant to charge Pay-to-Pay Fees. Tex. Fin. Code § 392.303(a)(2); *id.* § 392.304(a)(12).

37. SLS collects the Pay-to-Pay Fees even though it knows that such fees are not authorized under the Mortgage Agreement and it therefore has no right to collect them.

38. Like other borrowers whose mortgages are serviced by SLS, Mr. Ochondo has an FHA mortgage, meaning that the mortgage is issued by an FHA-approved lender and insured by the FHA. The uniform covenants of FHA mortgages state that the lender may only assess fees authorized by the Secretary of the U.S. Department of Housing and Urban Development ("HUD").

39. HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA Single Family Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits

8

servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III(A)(1)(f)(C)."

40. The Handbook does not authorize Pay-to-Pay Fees. And, SLS has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

41. Like other FHA mortgages, the Mortgage Agreement only permits SLS to collect "fees and charges authorized by the Secretary." Ex. A ¶ 8.

42. By assessing Pay-to-Pay Fees not "authorized by the Secretary," SLS violated the uniform covenants of the Mortgage Agreement.

43. Even if SLS is allowed to collect a fee under the auspice that it is a default-related fee under Paragraph 7 of the Mortgage Agreement, SLS's demand for payment of Pay-to-Pay Fees was a direct breach of that paragraph, too. Paragraph 7 states that only "amounts *disbursed* by Lender under this paragraph shall become an additional debt of Borrower." Ex. A ¶ 7. SLS collected more than the amounts it disbursed to process the Pay-to-Pay Transactions.

44. Also like other FHA mortgages, the Mortgage Agreement states that it "shall be governed by Federal law and the law of the jurisdiction in which the Property is located," i.e., Texas law. *See* Ex. A ¶ 14.

45. By collecting fees in violation of the Texas Finance Code, SLS breached the uniform covenants of the Mortgage Agreement.

46. The above paragraphs are contained in the Uniform Covenants section of the Mortgage Agreement. SLS has thus breached its contracts on a class-wide basis.

47. Prior to filing this Complaint, Mr. Ochondo made a written pre-suit demand upon SLS.

48. SLS was given a reasonable opportunity to cure the breaches and violations of law complained of herein but has failed to do so.

## CLASS ACTION ALLEGATIONS

49. Plaintiff Ochondo brings this action under Federal Rule of Civil Procedure 23 on behalf of the following classes of persons subject to modification after discovery and case development:

> **Nationwide FHA Class: All persons in the United States (1) with an FHA-insured mortgage (2) originated or serviced by SLS (3) who were charged one or more Pay-to-Pay fee and (4) whose mortgages provide the "Lender may collect fees or charges authorized by the Secretary," or language substantially similar.**
>
> **Texas Class: All persons (1) with a residential mortgage loan securing a property in Texas, (2) originated or serviced by SLS (3) and who paid a fee to SLS for making a loan payment by telephone, IVR, or the internet, during the applicable statutes of limitations through the date a class is certified.**

50. Class members are identifiable through Defendant's records and payment databases.

51. Excluded from the Classes are the Defendant; any entities in which it has a controlling interest; its agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

52. Plaintiff proposes that he serve as class representative.

53. Plaintiff and the Class members have all been harmed by the actions of Defendant.

54. Numerosity is satisfied. There are thousands of class members. Individual joinder of these persons is impracticable.

55. There are questions of law and fact common to Plaintiff and to the Class members, including, but not limited to:

    a. Whether Defendant assessed Pay-to-Pay Fees on Class members;

    b. Whether Defendant breached its contracts with borrowers by charging Pay-to-Pay Fees not authorized by their mortgage agreements;

    c. Whether Defendant violated the Texas Finance Code by charging Pay-to-Pay Fees not due;

    d. Whether Defendant's cost to process Pay-to-Pay Transactions is less than the amount that it charged for Pay-to-Pay Fees;

    e. Whether Plaintiff and the Class members were damaged by Defendant's conduct;

    f. Whether Plaintiff and the Class members are entitled to damages as a result of Defendant's actions;

    g. Whether Plaintiff and the Class members are entitled to restitution; and

    h. Whether Plaintiff and the Class members are entitled to attorney's fees and costs.

56. Plaintiff's claims are typical of the claims of the Class members. Defendant charged Plaintiff Pay-to-Pay Fees in the same manner as the rest of the Class members. Plaintiff and the Class members entered into uniform covenants in their Mortgage

Agreements that prohibit Pay-to-Pay charges or, at most, cap the amount of Pay-to-Pay Fees allowed to be charged at the actual amount disbursed by Defendant to process Pay-to-Pay Transactions.

57. Plaintiff is an adequate class representative because Plaintiff's interests do not conflict with the interests of the Class members and Plaintiff will adequately and fairly protect the interests of the Class members. Plaintiff has taken actions before filing this amended complaint, by hiring skilled and experienced counsel, and by making a pre-suit demand on behalf of Class members to protect the interests of the Class.

58. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

59. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

**COUNT I**
**Breach of Contract**
**On Behalf of Plaintiff and the Texas Class**
**and the Nationwide FHA Class**

60. Paragraphs 1 to 59 are incorporated herein by reference.

61. Plaintiff and the Class members entered into contracts with Defendant. Defendant breached its contracts with Plaintiff and the Class members when it charged Pay-to-Pay Fees not agreed to in the Uniform Mortgages, specifically prohibited by Uniform Mortgages, and in excess of the amounts disbursed by Defendant to process the cost of Pay-to-Pay Transactions.

62. Mr. Ochondo purchased a home subject to the Mortgage Agreement. *See* Ex. A. When SLS became the servicer of his mortgage, it became bound as an assignee by the Mortgage Agreement. Defendant was a party to the Mortgage Agreement whereby money was lent to Mr. Ochondo to purchase property in exchange for certain payment over time.

63. Mr. Ochondo makes loan payments over the phone and each time he does so, SLS charges him a Pay-to-Pay Fee. For example, on or about October 17, 2019, SLS charged Mr. Ochondo $7.50 for making a mortgage payment over the phone..

64. These fees are not authorized by the Mortgage Agreement.

65. Charging Pay-to-Pay Fees not authorized by the Mortgage Agreement violates Texas Finance Code §§ 392.303 and 392.304 because the Mortgage Agreement does not expressly allow Defendant to charge Pay-to-Pay Fees. Tex. Fin. Code § 392.303(a)(2); *id.* § 392.304(a)(12).

66. SLS collects the Pay-to-Pay Fees even though it knows that such fees are not authorized under the Mortgage Agreement and it therefore has no right to collect them.

67. Like other borrowers whose mortgages are serviced by SLS, Mr. Ochondo has an FHA mortgage, meaning that the mortgage is issued by an FHA-approved lender and insured by the FHA. The uniform covenants of FHA mortgages state that the lender may only assess fees authorized by the Secretary of the U.S. Department of Housing and Urban Development ("HUD").

68. HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA

Single Family Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III(A)(1)(f)(C)."

69. The Handbook does not authorize Pay-to-Pay Fees. And, SLS has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

70. Like other FHA mortgages, the Mortgage Agreement only permits SLS to collect "fees and charges authorized by the Secretary." Ex. A ¶ 8.

71. By assessing Pay-to-Pay Fees not "authorized by the Secretary," SLS violated the uniform covenants of the Mortgage Agreement.

72. Even if SLS is allowed to collect a fee under the auspice that it is a default-related fee under Paragraph 7 of the Mortgage Agreement, SLS's demand for payment of Pay-to-Pay Fees was a direct breach of that paragraph, too. Paragraph 7 states that only "amounts *disbursed* by Lender under this paragraph shall become an additional debt of Borrower." Ex. A ¶ 7. SLS collected more than the amounts it disbursed to process the Pay-to-Pay Transactions.

73. Also like other FHA mortgages, the Mortgage Agreement states that it "shall be governed by Federal law and the law of the jurisdiction in which the Property is located," i.e., Texas law. *See* Ex. A ¶ 14.

74. By collecting fees in violation of the Texas Finance Code, SLS breached the uniform covenants of the Mortgage Agreement.

75. The above paragraphs are contained in the Uniform Covenants section of the Mortgage Agreement. SLS has thus breached its contracts on a class-wide basis.

76. Plaintiff and the Class Members were harmed by Defendant's breaches.

## COUNT II
### Violation of the Texas Finance Code
### On behalf of Plaintiff and the Texas Class

56. Paragraphs 1 to 59 are hereby incorporated by reference.

57. Chapter 392 of the Texas Finance Code protects Texas consumers from deceptive and predatory debt collection practices.

58. The Texas Finance Code defines "consumer debt" as "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." Tex. Fin. Code § 392.001(2).

59. A "debt collector" is a person who "directly or indirectly engages in debt collection," which is in turn defined as "an action, conduct, or practice in collecting . . . consumer debts that are due or alleged to be due a creditor." Tex. Fin. Code §§ 392.001(5)-(6).

60. Plaintiff and the Texas Class members took out consumer debt when they took out mortgages in order to acquire real property for personal, family, or household uses. Plaintiff took out the mortgage loan secured by Plaintiff's property and now serviced by Defendant for personal, family, or household uses. *See* Tex. Fin. Code § 392.001(2).

61. Defendant is a debt collector because it directly or indirectly engages in debt collection.

15

62. The Texas Finance Code prohibits "debt collectors" such as Defendant from (1) "collecting or attempting to collect a … charge, fee, or expense incidental to the obligation unless the … incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code § 392.303(a)(2).

63. It also prohibits "debt collectors" such as Defendant from representing that a consumer debt "may be increased by the addition of … service fees, or other charges if a written contract or statute does not authorize the additional fees or charges." Tex. Fin. Code § 392.304(a)(12).

64. The Mortgage Agreements of Plaintiff and the Texas Class members did not expressly authorize Defendant to collect Pay-to-Pay Fees, and at most permitted Defendant to assess amounts "disbursed" to process Pay-to-Pay Transactions. Despite this, Defendant represented to Plaintiff and the Texas Class members that it had the right to collect Pay-to-Pay Fees, and collected them from Plaintiff and the Texas Class members.

65. As a result of Defendant's violations of the Texas Finance Code, Plaintiff and the Texas Class members were harmed. Plaintiff and the Texas Class members are entitled to damages and reasonable attorneys' fees and costs to the extent permitted by law.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself and others similarly situated, respectfully requests that the Court:

1. Certify the proposed Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. Award damages, including compensatory and exemplary damages, to Plaintiff and the Class members in an amount to be determined at trial;

3. Award statutory damages and/or penalties to Plaintiff and the Class members;

4. Permanently enjoin Defendant from the wrongful and unlawful conduct alleged herein;

5. Award Defendant and the Class members their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

6. Award pre- and post-judgment interest to the extent provided by law; and

7. Award such further relief as the Court deems appropriate.

**PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE.**

Dated: March 13, 2020

Respectfully Submitted,

*/s/ Hassan A. Zavareei*
Hassan A. Zavareei
Katherine M. Aizpuru
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
202-973-0900 (p)
202-973-0950 (f)
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

Jonathan R. Marshall
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, West Virginia
(304) 345-6555 (p)
(304) 342-1110 (f)
jmarshall@baileyglasser.com

James L. Kauffman
BAILEY & GLASSER LLP

17

1054 31st Street, Suite 230
Washington, DC 20007
(202) 463-2101 (p)
(202) 463-2103 (f)
jkauffman@baileyglasser.com

*Counsel for Plaintiff and the Putative Class*